**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Criminal No. 2019-09 |
| ) | |
| ) | |
| SHAWN TYSON & NATASHA FRANCE, ) | |
| ) | |
| Defendant. ) | |

ATTORNEYS:

**Gretchen Shappert**
**Meredith Edwards**
**Kim Chisholm**
U.S. Attorney's Office
St. Thomas, U.S.V.I.
    *For the United States of America,*

**Omadare Jupiter**
**Melanie Turnbull**
Office of the Federal Public Defender
St. Thomas, U.S.V.I.
    *For Shawn Tyson,*

**Adam G. Christian**
Ogletree Deakins Law Firm
St. Thomas, U.S.V.I.
    *For Natasha France.*

**ORDER**

**GÓMEZ, J.**

    Before the Court are the motions to suppress filed by Shawn

Tyson and Natasha France.

## I.   FACTUAL AND PROCEDURAL HISTORY

On January 28, 2019, the United States filed a six-count information against Shawn Tyson ("Tyson") and Natasha France ("France"). Count One charged Tyson with being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1). Counts Two and Three charged France with willful transfer, sale or transport of weapons to another unlicensed, out-of-state person in violation of 18 U.S.C. §§ 922(a)(5) and 924(a)(1)(D). Counts Four, Five, and Six charged both Tyson and France with mailing nonmailable firearms in violation of 18 U.S.C. § 1715. On March 7, 2019, the Grand Jury returned a nine-count indictment. In addition to the charges outlined above, the indictment charges Tyson and France with three counts of delivery of firearms to a common carrier for shipment without written notice in violation of 18 U.S.C. § 922(e). On June 6, 2019, the Grand Jury returned a 10-count superseding indictment. The superseding indictment added a charge against Tyson of possessing a machine gun in violation of 18 U.S.C. § 922(o).

On March 12, 2019, Tyson and France filed motions to suppress. Both Tyson and France seek to suppress physical evidence uncovered from the warrantless searches of several packages on November 14, 2018. On April 23, 2019, the Court held a hearing on the motions to suppress. The evidence submitted by

the parties and adduced at the hearing established the
following:

On October 23, 2018, Jerry Quetel ("Quetel"), an officer
with Customs and Border Protection ("CBP"), was inspecting
international mail coming into St. Thomas, U.S. Virgin Islands
when he came across a package addressed to Shawn Tyson
("Tyson"). The package, which originated in Israel, bore a
shipping label that read: "Roni kit plastic." ECF No. 69 at
14:7. Quetel knew that a Roni kit was a "gun accessory" for a
"small handgun" that gave the firearm "the look and the handle,
the feel of an assault weapon." *See id.* at 15:22-23, 16:1-2.
Quetel subsequently opened the package and discovered three Roni
kits. Quetel explained that "anytime [CBP officers] come across
anything dealing with firearms [they] would open it to see if it
actually is related to firearms" because they felt "that's part
of what we do, protecting the borders." *See id.* at 17:2-5.

On November 14, 2018, Sharissa Smith ("Smith") and Bryan
McCoy ("McCoy"), both officers with CBP, were inspecting
domestic mail entering the U.S. Virgin Islands when they
discovered a Priority Mail package addressed to Tyson and sent
by France from Georgia. Recalling the search of the package
containing Roni kits, Tyson and McCoy "Googled [Tyson] and saw
that he was a convicted felon for trafficking firearms." *See id.*

at 31:11-12. McCoy then opened the package and found that it contained "gun parts." *See id.* at 31:18.

A search of the postal system uncovered four more Priority Mail packages currently en route to Tyson. Each package was sent by France from Georgia. The packages were all x-rayed by CBP officers and later opened. Each contained gun parts.

## II. DISCUSSION

### A. Validity of the November 14, 2018, Searches under the Fourth Amendment

The Fourth Amendment protects citizens from "unreasonable searches and seizures" of "their persons, houses, papers and effects." U.S. Const., amend. IV. The Fourth Amendment protects citizens from governmental intrusions into areas in which citizens have a "reasonable expectation of privacy*." See, e.g., Byrd v. United States*, 138 S. Ct. 1518, 1526 (2018). "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).

In *United States v. Baxter*, No. CR 2017-24, 2018 WL 6173880 (D.V.I. Nov. 26, 2018), CBP officers were inspecting domestic mail arriving at the airport in St. Thomas when a drug sniffing dog alerted on a Priority Mail package. *Id.* at *1. Without obtaining a warrant, the dog's handler opened the package and discovered a handgun concealed in a sweater. CBP officers

claimed that the sweater smelled of marijuana. *Id.* at *1. A
similar Priority Mail package was later identified, which was x-
rayed and then opened without a warrant. *Id.* at *2. That package
also contained a firearm. The United States alleged that Steven
Baxter ("Baxter") sent the packages. Baxter was charged with two
counts of illegally transporting a firearm. *Id.* This Court
suppressed the evidence uncovered through the warrantless search
of the package. *Id.* at *17.

The *Baxter* Court first explained that the protections of
the Fourth Amendment applied to some mailed matter, including
Priority Mail, which is designated as "sealed against
inspection." *Id.* at *5 (quoting 39 C.F.R. § 111.1). The *Baxter*
Court noted that federal law excluded the United States Virgin
Islands from the United States customs zone and imposed duties
on certain items being transported into the United States
customs zone from the United States Virgin Islands, creating an
approximation of a border. *Id.* at *14. Because of that
exclusion, the Third Circuit held in *United States v. Hyde*, 37
F.3d 116 (3d Cir. 1994) that "'routine customs search of persons
and their belongings without probable cause as they leave the
Virgin Islands for the continental United States are not
unreasonable under the Fourth Amendment.'" *Baxter*, 2018 WL
6173880 at *7 n.3 (quoting *Hyde*, 37 F.3d at 117).

Notwithstanding that holding with respect to travelers leaving
the United States Virgin Islands by air, the Third Circuit has
never extended that exception to the warrant requirement for
items or persons traveling from the mainland to the United
States Virgin Islands. After careful consideration, the *Baxter*
Court declined to extend *Hyde* to items transported from the
mainland to the United States Virgin Islands. *Id.* at *17. This
Court held that "where. . . law enforcement conducts warrantless
searches of sealed packages sent from the United States mainland
to the United States Virgin Islands, law enforcement runs afoul
of the Constitution." *Id.*

*Baxter* recognized that the vitality of the Fourth Amendment
protection afforded United States citizens on, or traveling
between, United States sovereign soil, was neither schizophrenic
in character nor locationally diminished. That is, a locus on
United States soil could not cloak an individual there with the
protection of the Fourth Amendment and at the same time denude
the very same individual of some or all of the Fourth
Amendment's protection.

The Court sees nothing that materially distinguishes the
warrantless searches of Priority Mail packages in *Baxter* from
the warrantless searches of Priority Mail packages in this case.
Indeed, the United States acknowledges as much. *See* ECF No. 46

at 7 n.3 ("The United States acknowledges that this Court has

ruled in *United States v. Baxter*, 3:17CR00024, that the search

by CBP of Virgin Islands' mail from the continental United

States violates the Fourth Amendment, but the United States

asserts this argument to preserve it for potential appellate

review."). Accordingly, the Court holds that the November 14,

2018, package searches in this case violated the Fourth

Amendment.

### B. Good-Faith Exception

When evidence is obtained in violation of a defendant's

Fourth Amendment rights, the exclusionary rule may prohibit the

introduction of that evidence for the purposes of proving a

defendant's guilt. *See, e.g., United States v. Dickerson,* 530

U.S. 428, 433 (2000). Significantly, however, the exclusionary

rule "is not an individual right," *Herring v. United States*, 555

U.S. 135, 141 (2009), but rather "a judge-made remedy designed

to deter illegal police conduct," *United States v. Mosley*, 454

F.3d 249, 269 (3d Cir. 2006). While this deterrence is

important, "the heavy social costs of suppressing evidence

counsel against [the] indiscriminate application" of the

exclusionary rule. *See United States v. Wright*, 777 F.3d 635,

638 (3d Cir. 2015).

Balancing these competing concerns, the good-faith
exception to the exclusionary rule provides that
unconstitutional conduct will not result in suppression if "law
enforcement officers 'acted with an objectively reasonable good-
faith belief that their conduct was lawful.'" *United States v.
Katzin*, 769 F.3d 163, 171 (3d Cir. 2014) (alterations omitted)
(quoting *Davis v. United States*, 564 U.S. 229, 238 (2011)); *see
also  Virgin Islands v. John*, 654 F.3d 412, 417 (3d Cir. 2011)
("Where, for instance, a reasonable officer cannot have been
expected to know that what he was doing was unconstitutional, he
is unlikely to be discouraged in his actions by the knowledge
that the fruits of unconstitutional searches will be
suppressed."). If, however, law enforcement officers "'had
knowledge, or may properly be charged with knowledge, that the
search was unconstitutional under the Fourth Amendment,'
suppression is warranted." *Katzin*, 769 F.3d at 182 (quoting
*Illinois v. Krull,* 480 U.S. 340, 348-49 (1987)). In determining
whether law enforcement's belief in the lawfulness of their
conduct was objectively reasonable, a court must consider "'all
of the circumstances' and confine [its] inquiry to the
'objectively ascertainable question whether a reasonably well
trained officer would have known that the search was illegal' in

light of that constellation of circumstances."[1] *Id.* (quoting

*United States v. Leon,* 468 U.S. 897, 922 n. 23 (1984)).

Given that framework, some discussion of the

jurisprudential developments surrounding warrantless searches of

individuals and things travelling between the United States

Virgin Islands and the United States mainland is in order.

In *United States v. Hyde,* 37 F.3d 116 (3d Cir. 1994), the

defendants were subjected to warrantless searches in the St.

Thomas airport as they were leaving the Virgin Islands for

Florida. *Id.* at 117. The district court suppressed the

discovered evidence. *Id.* at 118. On appeal, the Third Circuit

reversed, "hold[ing] that routine customs search of persons and

their belongings without probable cause as they leave the Virgin

Islands for the continental United States are not unreasonable

under the Fourth Amendment." *Id.* at 117.

Prior to *Baxter*, this Court appeared to presume that travel

of persons and things between the United States Virgin Islands

---

[1] In *Davis v. United States*, 564 U.S. 229 (2011), the U.S. Supreme Court held that, under the good-faith exception, "searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule." *Id.* at 232. The Third Circuit has explained that this holding did not supplant "the general good faith analysis" discussed in the text above. *See Katzin*, 769 F.3d at 177. Indeed, "to exclude evidence simply because law enforcement fell short of relying on binding appellate precedent would impermissibly exceed the Supreme Court's mandate that suppression should occur in only 'unusual' circumstances: when it 'furthers the purposes of the exclusionary rule.'" *Id.* at 177-78 (alterations omitted) (quoting *Leon*, 468 U.S. at 918.

and the United States mainland in either direction and in any

circumstance was, for Fourth Amendment purposes, identical to

travel between foreign soil and United States sovereign

territory. See *David v. Gov't of Virgin Islands*, No. CRIM.APP.

2003-129, 2009 WL 1872678 (D.V.I. June 25, 2009); *United States

v. Mark*, No. CRIM 2006-80, 2007 WL 2669576 (D.V.I. Sept. 5,

2007); *United States v. Chabot*, 531 F. Supp. 1063, 1069 (D.V.I.

1982). With its ruling in *Baxter*, the Court has clearly rejected

that presumption.

As discussed above, the *Baxter* Court held that the *Hyde*

warrant exception did not extend to searches of Priority Mail

packages mailed from the United States mainland to the United

States Virgin Islands. *See Baxter*, 2018 WL 6173880 at *17. In

*United States v. Barconey*, No. CR 2017-0011, 2019 WL 137579

(D.V.I. Jan. 8, 2019), this Court held that the *Hyde* warrant

exception did not extend to searches of luggage and individuals

arriving at a United States Virgin Islands airport after

traveling from the mainland United States. *Id.* at *12.

*Baxter* was decided on November 26, 2018, while *Barconey* was

decided on January 8, 2019. The searches at issue in this case

were on November 14, 2018. To the extent that chronology of

events could give rise to the application of the good-faith

exception here, it is the Government that bears the burden of

showing that the good-faith exception applies. *See United States v. Ganias*, 824 F.3d 199, 236 (2d Cir. 2016). At the same time, application of the exception may be waived by a failure to raise it when opposing a motion to suppress. *See United States v. Lara*, 815 F.3d 605, 613 (9th Cir. 2016) (holding that government waived good-faith exception by failing to raise argument in district court).

In *Baxter*, the United States did not argue that the good-faith exception should apply. *See generally United States v. Baxter*, Crim. Case No. 17-24, *Gov't Br.*, ECF No. 83; *United States v. Baxter*, Crim. Case No. 17-24, *Suppression Hr'g Tr.*, ECF No. 99. Accordingly, after finding that the warrantless searches at issue in that case were unconstitutional, the Court suppressed the evidence uncovered by those searches. *See Baxter*, 2018 WL 6173880 at *17. On the other hand, in *Barconey* and *Thomas-Okeke*, the United States demonstrated that the agents acted based on their reasonable understanding of the state of the law pre-*Baxter*. *See United States v. Barconey*, Crim. Case No. 17-11, *Gov't Br.*, ECF No. 94 at 13; *United States v. Thomas-Okeke*, Crim. Case No. 17-8, *Gov't Br.*, ECF No. 58 at 1. Accordingly, the Court did not suppress the unconstitutionally recovered evidence in those cases. *See Barconey*, 2019 WL 137579, at *16; *Thomas-Okeke*, 2019 WL 2344772, at *6.

Here, the United States has demonstrated that the agents who undertook the searches in this case did so in good faith reliance on this Court's pre-*Baxter* decisions. In light of that, the Court finds that the agents here, in good faith, concluded that travel between the United States Virgin Islands and the United States mainland was, for Fourth Amendment purposes, equivalent to travel between a foreign state and the United States. Thus, the good-faith exception to the exclusionary rule applies.

The premises considered, it is hereby

**ORDERED** that the motions to suppress docketed at ECF Number 38, ECF Number 40, ECF Number 50, and ECF Number 51 are **DENIED**.

S_____
 **CURTIS V. GÓMEZ**
 **District Judge**